Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| TCG INVESTMENTS LLC; CHRISTOPHER FOSTER; RAMÓN ORTIZ; CHESTER KWONG<br><br>APELANTES<br><br>v<br><br>REMEDY VENTURES II, LLC<br><br>APELADO | TA2025AP00209 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2025CV006506<br><br>Sobre: Sentencia Declaratoria; Injunction Preliminar y Permanente |
| TCG INVESTMENTS LLC; CHRISTOPHER FOSTER; RAMÓN ORTIZ; CHESTER KWONG<br><br>APELANTES<br><br>v<br><br>REMEDY VENTURES II, LLC<br><br>APELADO | TA2025AP00320 | *Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan*<br><br>*Caso Núm. SJ2025CV006506*<br><br>*Sobre: Sentencia Declaratoria; Injunction Preliminar y Permanente* |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Pagán Ocasio, y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 9 de septiembre de 2025.

### I.

El 6 de agosto de 2025, Christopher Foster (Foster), el señor Ramón Ortiz (Ortiz) y el señor Chester Kwong (Kwong) (conjuntamente, parte apelante) comparecieron ante nos y presentaron una *Apelación* en la que solicitaron que revoquemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario) el 18 de julio de 2025,

notificada y archivada digitalmente en autos el mismo día. [1] Mediante dicho dictamen, el TPI desestimó la solicitud del remedio extraordinario de *injunction* preliminar y permanente tras concluir que la parte apelante cuenta con un remedio adecuado en ley. En consecuencia, ordenó la reasignación del pleito a una sala de trámite civil ordinario.

El 19 de agosto de 2025, emitimos una *Resolución* en la que concedimos a la parte apelada Remedy Ventures II, LLC (Remedy o parte apelada) hasta el 5 de septiembre de 2025 para presentar su alegato en oposición.

El 28 de agosto de 2025, la parte apelante presentó una *Moción de orden provisional en auxilio de jurisdicción* en la que solicitó que ordenemos la paralización de los procedimientos de arbitraje ante la American Arbitration Association (AAA) relacionados al caso de marras hasta tanto se resuelva este recurso.

El 26 de agosto de 2025, emitimos una *Resolución* en la que concedimos a la parte apelada hasta el 29 de agosto de 2025 para exponer su posición con relación a la solicitud de orden en auxilio de jurisdicción.

Por su parte, el 29 de agosto de 2025, la parte apelada presentó una *Moción de desestimación* alegando falta de jurisdicción sobre la persona porque no había sido debidamente emplazada.

Posteriormente, el 2 de septiembre de 2025, la parte apelada presentó una *Moción suplementando moción de desestimación* en la que discutió tanto la solicitud de desestimación como el recurso mismo.

Ese mismo día, emitimos una *Resolución* en la que concedimos a la parte apelante hasta el 5 de septiembre de 2025 para exponer su posición a la solicitud de desestimación.

---

[1] Véase la Entrada Núm. 4 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Caso del TPI (SUMAC-TPI).

El 4 de septiembre de 2025, la parte apelante presentó una *Oposición a "moción de desestimación"* en la que solicitó que se deniegue la moción de desestimación, se expida la solicitud de orden en auxilio de jurisdicción paralizando los procedimientos de arbitraje y se revoquen los dictámenes emitidos por el TPI.

El 5 de septiembre de 2025, Remedy presentó un *Alegato de la parte apelada* en el que solicitó que se desestime la *Apelación*.

Por otro lado, el 8 de septiembre de 2025, la parte apelante de epígrafe presentó otra *Apelación* en la que solicitó la revocación de la *Sentencia* emitida por el TPI el 15 de agosto de 2025, notificada y archivada digitalmente en autos en la misma fecha. A ese recurso se le asignó el alfanumérico TA2025AP00320. Junto a ese recurso, presentó una *Moción de orden provisional en auxilio de jurisdicción,* en la que también solicitó que se ordene la paralización de los procedimientos de arbitraje ante la AAA relacionados a este caso.

Ese mismo día, la parte apelante presentó una *Solicitud de consolidación* en la que solicitó que se consolidara el caso TA2025AP00320 con este caso.

Al día siguiente, emitimos una *Resolución* en la que ordenamos la consolidación de ambos casos por tratarse de una misma controversia.

Con el beneficio de la comparecencia de las partes pormenorizamos los hechos procesales atinentes a ambos recursos de *Apelación.*

**II.**

El 17 de julio de 2025, TCG Investments, LLC (TCG) y los señores Foster, Ortiz y Kwong presentaron una *Demanda* en solicitud de *injunction* preliminar y permanente y sentencia declaratoria en contra de Remedy.[2] Indicaron que TCG y Remedy

---

[2] Véase Entrada Núm. 1 del expediente del caso en SUMAC-TPI.

suscribieron un contrato titulado "Credit Agreement" (Contrato), como "Borrower" y "Lender" respectivamente. Según alegaron, dicho Contrato no incluye a sus miembros en su capacidad personal. Los señores Foster, Ortiz y Kwong adujeron que firmaron el Contrato como miembros de TCG en carácter exclusivamente corporativo. Asimismo, mencionaron que el Contrato incluye una cláusula de arbitraje pero que, en virtud del mismo contrato, la cláusula no puede extenderse a personas naturales, como ellos, que no hayan suscrito el acuerdo en su capacidad personal ni asumido obligación como garantes.

Así las cosas, señalaron que Remedy presentó ante la AAA una demanda de arbitraje en contra de TCG y la parte apelante alegando que tanto TCG como los señores Foster, Ortiz y Kwong responden solidariamente por la deuda reclamada. No obstante, estos arguyeron que ninguno de ellos suscribió el Contrato en su carácter personal, no consintieron a someterse a arbitraje en su capacidad individual, ni firmaron garantía personal que tuviera cláusula arbitral, sino que fue suscrito exclusivamente por TCG.

Por tales hechos, solicitaron al TPI la expedición de un *injunction* preliminar y permanente que paralizara el procedimiento arbitral instado por Remedy en contra de los señores Foster, Ortiz y Kwong en su carácter personal y, que se declarase que no se les puede obligar a someterse a arbitraje.

Al día siguiente, el TPI emitió una *Sentencia Parcial* mediante la cual desestimó el recurso de *injunction* preliminar y permanente y, como consecuencia, ordenó la reasignación del caso al trámite civil ordinario.[3] El foro primario determinó que el reclamo no reunió los elementos necesarios para la expedición del recurso extraordinario de *injunction* solicitado. Concluyó que de las

---

[3] Véase Entrada Núm. 4 del expediente del caso en SUMAC-TPI.

alegaciones surge la existencia de una controversia sobre quiénes son las partes llamadas a responder en virtud del Contrato entre TCG y Remedy. Por ello, resolvió que la parte apelante contaba con remedios adecuados en ley. Incluso, el TPI expresó que la parte apelante reconoció implícitamente la disponibilidad de un remedio adecuado en ley en la causa de acción de sentencia declaratoria. Así, determinó que la sentencia declaratoria sería el vehículo procesal apropiado para dilucidar dicha controversia sobre la existencia, alcance y naturaleza de los derechos de las partes en el Contrato.

El 5 de agosto de 2025, la parte apelante presentó una *Moción informativa* mediante la cual comunicó que, al igual que TCG, presentaron la contestación a la demanda y mociones dispositivas ante la AAA cuestionando la jurisdicción de dicho foro, pero que aún están en consideración y que, a pesar de ello, la vista preliminar en el proceso arbitral se pautó para el 12 de septiembre de 2025.[4] Esta adujo que la celebración de tal vista tendría el efecto de compelerlos a participar de un proceso de arbitraje al que no han consentido y que, precisamente, ese era el perjuicio inminente que pretendía mitigar el *injunction* solicitado.

Entretanto, inconforme con la determinación del TPI, el 6 de agosto de 2025, la parte apelante presentó ante nos el recurso de *Apelación* de epígrafe en el que formuló el siguiente señalamiento de error:

> **Erró y abusó de su discreción el Tribunal de Primera Instancia al desestimar la causa de acción dirigida a la expedición de un *injunction* preliminar y permanente, y al concluir que los Demandantes disponían de un remedio adecuado en derecho mediante la sentencia declaratoria, pese a que no evaluó correctamente los factores exigidos por la Regla 57 de Procedimiento Civil ni reconoció que el *injunction* constituye el mecanismo idóneo para paralizar un procedimiento arbitral iniciado sin consentimiento válido, frente a un daño procesal inminente y de carácter irreparable.**

---

[4] Véase Entrada Núm. 6 del expediente del caso en SUMAC-TPI.

En síntesis, la parte apelante alegó que la amenaza de daño irreparable, la falta de consentimiento para arbitrar, y la alta probabilidad de éxito en los méritos justifican de forma concluyente la intervención del TPI mediante el remedio interdictal. Argumentó que el *injunction* reclamado es necesario e indispensable para evitar que las controversias planteadas en el caso se tornen académicas y para permitirles a estos la oportunidad de poder vindicar sus reclamos en el foro judicial correspondiente.

Alegó, además, que la solicitud concurrente de una sentencia declaratoria y de un *injunction* es jurídicamente viable y deseable cuando el promovente enfrenta una amenaza de daño y necesita clarificación inmediata sobre sus derechos. Asimismo, manifestó que el negar la procedencia de un *injunction* por la mera disponibilidad de una sentencia declaratoria tergiversa la función y estructura de ambos remedios. También, adujo que la sentencia declaratoria que estos pudieran obtener no sería suficiente para mitigar el peligro inminente de que sean obligados a participar de un arbitraje en curso y al que no consintieron en su carácter personal.

A juicio de la parte apelante, el TPI se equivocó al denegar el remedio bajo un entendido erróneo de que la disponibilidad de una sentencia declaratoria excluye la concesión del interdicto. Esta alegó que, en este caso, aunque se declare que los señores Foster, Ortiz y Kwong no están obligados a arbitrar, solo el *injunction* puede impedir que continúe el proceso arbitral ante la AAA.

Por lo cual, solicitó la revocación de la determinación del TPI desestimando el *injunction* y concediendo un interdicto provisional que paralice el proceso arbitral en lo que se resuelve la controversia planteada. Asimismo, solicitó que se ordene la continuación de los procedimientos en torno a la solicitud de sentencia declaratoria.

En el ínterin, y tras la reasignación del caso al trámite civil ordinario, el 15 de agosto de 2025, el TPI emitió una *Sentencia* en la que determinó ordenar la paralización del caso, mientras la solicitud de desestimación ante la AAA se encontrara pendiente de determinación. Por lo cual, ordenó su archivo administrativo.[5]

Posteriormente, el 26 de agosto de 2025, la parte apelante presentó una *Moción de orden provisional en auxilio de jurisdicción* en la que nos solicitó que ordenemos la paralización de los procedimientos de arbitraje ante la AAA hasta tanto se resuelva la controversia relacionada a la validez del contrato de arbitraje, la procedencia del *injunction* y la sentencia declaratoria.

Por su parte, el 29 de agosto de 2025, Remedy presentó una *Moción de desestimación* en la que arguyó que no había sido debidamente emplazada. Por ello, sostuvo que hay falta de jurisdicción sobre la persona. Según plantea, de acuerdo con la Regla 83(b)(1) del Reglamento del Tribunal de Apelaciones, *supra*, pág. 109, procede la desestimación del recurso de apelación.

Posteriormente, el 2 de septiembre de 2025, Remedy presentó una *Moción suplementando moción de desestimación* en la que arguyó que la parte apelante ha incumplido, patente y manifiestamente, con los requisitos procesales que rigen la concesión de los remedios de naturaleza extraordinaria. Adujo que la parte apelante no presentó su solicitud de interdicto conforme a las Reglas 57.1 y 57.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 57.1 y 57.2, al solicitar la expedición de un entredicho provisional *ex parte* ni haber notificado conforme a derecho la solicitud de *injunction* preliminar. Por eso, alegó que el recurso de apelación radicado por la parte apelante es procesalmente defectuoso y, por ende, viola el debido proceso de ley de la parte apelada.

---

[5] Véase Entrada Núm. 9 del expediente del caso en SUMAC-TPI.

En respuesta, el 4 de septiembre de 2025, la parte apelada presentó una *Oposición a "moción de desestimación"* en la que, en primer lugar, alegó que la sentencia apelada se emitió a un (1) día de expedirse los emplazamientos por lo que refutó que la falta de diligenciamiento en el emplazamiento de Remedy incida en la jurisdicción del foro apelativo para revisar el presente recurso. Adujo, además, que la parte apelada fue objeto de múltiples gestiones de emplazamiento pero que, ante su conducta evasiva, fue necesario acudir al mecanismo excepcional de emplazamiento por edicto. Esta arguyó que Remedy pretende beneficiarse de su ocultamiento y transformar su conducta evasiva en una defensa jurisdiccional.

Manifestó que en el caso de marras existe un emplazamiento en curso, una sentencia parcial adversa y un recurso presentado en término y que la parte apelada lo que busca es disfrazar la alegada falta de jurisdicción sobre una táctica dilatoria. Además, señaló que Remedy, mediante su escrito suplementario discutió los méritos del recurso de apelación y de la reclamación interdictal, y, con tal proceder, se sometió voluntariamente a la jurisdicción del Tribunal. Por tanto, sostuvo que tal hecho es suficiente para denegar cualquier argumento de falta de jurisdicción sobre la persona. Y así, solicitó que se deniegue la moción de desestimación, se expida la solicitud en orden de auxilio de jurisdicción paralizando el proceso arbitral y se revoque la *Sentencia Parcial* emitida por el TPI.

Por su parte, el 5 de septiembre de 2025, Remedy presentó un *Alegato de la parte apelada.* En síntesis, alegó que los señores Foster, Ortiz y Kwong suscribieron el contrato en carácter estrictamente personal, pero sus firmas aparecen sin designación corporativa alguna y el propio Contrato establece que para actuar como agentes o representantes tiene que haber una designación expresa a tales efectos, lo que no hubo. De esta manera, arguyó que

los términos el Contrato son claros y que también la cláusula de arbitraje del Contrato es clara, inequívoca y vinculante, por lo que no existen fundamentos para la paralización de sus procesos. Por lo cual, en conjunto con los fundamentos que esbozó en los escritos anteriores, suplicó la desestimación del recurso de *Apelación* para que se permita la continuación de los procedimientos de arbitraje.

De otro lado, el 8 de septiembre de 2025, la parte apelante presentó otro recurso de *Apelación* en el caso TA2025AP00320 en el que formuló el siguiente señalamiento de error:

> **Erró y abusó de su discreción el Tribunal de Primera Instancia al ordenar la paralización del pleito en vez de adjudicar la causa de acción de sentencia declaratoria dirigida a resolver la cuestión umbral de arbitrabilidad por falta de consentimiento, al delegar indebidamente al panel arbitral de la AAA una determinación que corresponde de forma exclusiva al foro judicial conforme a la doctrina de *First Options of Chicago v. Kaplan*, infra, y a la Regla 59.1 de Procedimiento Civil, privando a los demandantes del remedio idóneo para clarificar sus derechos y evitando un daño procesal irreparable derivado de verse compelidos a litigar en un foro arbitral sin obligación válida.**

En dicho recurso, alegó que la disputa de si una parte está o no obligada por una cláusula arbitral es una cuestión reservada para los tribunales. Adujo que le corresponde al Tribunal determinar si los señores Foster, Ortiz y Kwong, en su carácter personal, consintieron a arbitrar y, que es a partir de ese momento en que puede operar la deferencia al foro arbitral. Arguyeron que el TPI mediante su determinación de paralización, delegó indebidamente una controversia de consentimiento sobre la cual la AAA carece de autoridad para decidir, en primera instancia. Por esos fundamentos, sostuvo que la paralización decretada por el TPI equivaldría a confirmar un daño irreparable.

También, presentó una *Moción de orden provisional en auxilio de jurisdicción*, en la que, idéntico que en el caso TA2025AP00209,

solicitó que se ordene la paralización de los procedimientos de arbitraje ante la AAA relacionados a este caso.

**III.**

**A.**

Como parte de la función de un tribunal apelativo, este no intervendrá ante la discreción del foro primario, salvo que demuestre que el TPI actuó con perjuicio o parcialidad o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial. ***Lluch v. España Service Sta.***, 117 DPR 729, 748 (1986). En lo pertinente, la discreción judicial se ha definido como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." ***Banco Popular de Puerto Rico v. Gómez Alayon***, 213 DPR 314, 335 (2023). La discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del derecho. Íd. Cónsono con lo anterior, el Tribunal Supremo ha definido la discreción judicial como:

El Tribunal Supremo de Puerto Rico ha definido la discreción judicial de la siguiente forma:

> El concepto legal de la discreción no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho, sino la obligación de aplicar las reglas del conocimiento distintivo a ciertos hechos jurídicos con el objeto de mitigar los efectos adversos de la Ley, a veces diferenciando unos efectos de otros. Discreción es, pues, una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera, cuando los elementos coactivos de una Ley resultan superiores a los elementos reparadores. ***Pueblo v. Sánchez González***, 90 DPR 197, 200 (1964).

Como la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera, en la medida que el curso de acción de un tribunal en el ejercicio de su discreción para conducir los procedimientos sea irrazonable o poco

sensato, en esa medida estará abusando de su discreción. ***Ramírez v. Policía de P.R.***, 158 DPR 320 (2002).

**B.**

La Regla 57 de las de Procedimiento Civil, *supra*, R. 57 y el Código de Enjuiciamiento Civil, 32 LPRA sec. 3521 *et seq.* regulan el recurso extraordinario del *injunction* en nuestro ordenamiento. En particular, la Regla 57 de las de Procedimiento Civil, *supra*, R.57 establece la existencia de tres modalidades de *injunction*, a saber: (a) el entredicho provisional, (b) el *injunction* preliminar y (c) el *injunction* permanente.

La Regla 57.3 de Procedimiento Civil, *supra*, R. 57.3, prescribe que para expedir una orden de entredicho provisional o *injunction* preliminar, el Tribunal deberá considerar los siguientes criterios: (a) naturaleza del daño a que está expuesto la parte peticionaria; (b) la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley; (c) la probabilidad de que la parte promovente prevalezca; (d) la probabilidad de que la causa se torne académica; (e) el impacto sobre el interés público del remedio que se solicita; y (f) la diligencia y buena fe con que ha obrado la parte peticionario. Véase, además: ***Misión Ind. P.R. v. J.P. y A.A.A.***, 142 DPR 656, 679-680 (1997).

En Puerto Rico, el interdicto es el instrumento más eficaz para vindicar los derechos protegidos por nuestra Constitución. ***Pedraza Rivera v. Collazo Collazo,*** 108 DPR 272, 276 (1979). El *injunction* preliminar es un recurso emitido por el tribunal previo a la celebración del juicio en su fondo, y usualmente, luego de la celebración de una vista "en donde las partes tienen la oportunidad de presentar prueba en apoyo y oposición a su expedición". ***Next Step Medical v. Bromedicon***, 190 DPR 474, 486 (2014). Su propósito fundamental es mantener el *status quo*, hasta tanto se celebre un juicio en los méritos para adjudicar la controversia en cuestión. ***Asoc. Vec. Villa Caparra v. Asoc. Fom. Educativo***, 173

DPR 304, 316 (2008). Con la expedición de una orden de *injunction* preliminar, sea para requerir o prohibir un acto, se evita que la conducta del demandado produzca una situación que pueda convertir en académica los reclamos del demandante y, por ende, la sentencia que en su día se dicte. Íd.

El recurso de *injunction* es de carácter discrecional. El peso de la prueba recaerá sobre la parte promovente, quien tendrá la obligación de demostrar al tribunal la **ausencia de un remedio adecuado en ley**, que es aquel que puede ser otorgado en una acción de daños, una criminal o cualquier otra disponible. ***Pérez Vda. Muñiz v. Criado***, 151 DPR 355, 373 (2000) (Énfasis nuestro). "Mientras exista algún remedio eficaz, completo y adecuado en ley, no se considera el daño como irreparable". Íd., pág. 372. La parte promovente del *injunction* deberá "demostrar que de no concederse este antes de adjudicarse el caso en sus méritos, sufriría daño irreparable", ***Misión Ind. P.R. v. J.P. y A.A.A.***, supra, pág. 682.

El concepto del "daño irreparable" en el contexto del remedio en equidad de *injunction* se refiere a "aquel que no puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles [...], o a aquel que no puede ser apreciado con certeza ni debidamente compensado por cualquier indemnización que pudiera recobrarse en un pleito en ley". ***Misión Ind. P.R. v. J.P. y A.A.A.***, supra, pág. 681.

En cambio, son daños reparables aquellos que la parte puede resarcir mediante otro remedio adecuado en ley. Tal es el caso de los daños monetarios los cuales, de ordinario, son daños reparables. ***Mun. de Ponce v. Gobernador***, supra, pág. 786. Ahora bien, una reclamación monetaria no excluye el remedio de *injunction* si resulta necesario para mantener el *status quo*, para evitar que el paso del tiempo deje al demandante sin un remedio efectivo y para proteger

un derecho propietario del demandante amenazado por un apremiante acto ilegal del demandado. Íd.

### c.

La sentencia declaratoria es un remedio que permite al tribunal declarar derechos, estados y otras relaciones jurídicas, aunque existan otros remedios disponibles. Regla 59 de Procedimiento Civil, *supra*, R. 59; **Mun. Fajardo v. Srio. Justicia et al.**, 187 DPR 245, 254 (2012). La solicitud de sentencia declaratoria tiene como resultado una decisión judicial sobre cualquier divergencia en la interpretación de la ley. Regla 59.2 de Procedimiento Civil, *supra*, R. 59.2. Sin embargo, solo se emite cuando existe una controversia sustancial entre partes con intereses legales adversos, con el propósito de disipar la incertidumbre jurídica. **Mun. Fajardo v. Srio. Justicia et al.**, supra, pág. 254. Además, una vez dictada, tiene la misma eficacia y vigor que cualquier otro fallo judicial. Regla 59 de Procedimiento Civil, *supra*, R.59.

La Regla 59.2 de Procedimiento Civil, *supra*, R.59.2, establece que cualquier persona con interés en una escritura, testamento, contrato escrito u otro documento constitutivo de contrato, o cuyos derechos fuesen afectados por un estatuto, estado u otras relaciones jurídicas, ordenanza municipal, contrato o franquicia, puede solicitar una decisión sobre cualquier divergencia en la interpretación o validez de dichos documentos. Asimismo, puede solicitar que se dicte una declaración sobre los derechos, estados u otras relaciones jurídicas derivadas de estos documentos. Íd.

Cabe resaltar que, el foro primario puede conceder remedios adicionales fundados en una sentencia declaratoria, siempre que fueren necesarios o adecuados. Regla 59.4 de Procedimiento Civil, *supra*, R.59.4. De esta forma, la sentencia declaratoria representa un mecanismo procesal de carácter remedial que permite dilucidar

ante los tribunales los méritos de cualquier reclamación que implique un peligro potencial en contra de una parte. ***Suárez v. C.E.E. I***, 163 DPR 347, 354 (2004); ***Charana v. Pueblo***, 109 D.P.R. 641, 653 (1980). Por ser así, la sentencia declaratoria permite a una parte obtener la protección judicial antes de que el peligro se convierta en uno real. ***Charana v. Pueblo***, supra. Ahora bien, si la disputa no está anclada en hechos específicos, "adquiere un matiz teórico que generalmente la excluye del ámbito legítimo de la sentencia declaratoria". ***Coca-Cola v. Unión de Tronquistas***, 109 DPR 834, 838 (1980).

De otro lado, la sentencia declaratoria propicia la seguridad y certidumbre en las relaciones jurídicas tanto en el ámbito público, como en el privado. ***Romero Barceló v. E.L.A.***, 169 DPR 460, 507 (2006); ***Sánchez et al. v. Srio de Justicia et al.***, 157 DPR 360, 410 (2002); ***Moscoso v. Rivera***, 76 DPR 481, 488 (1954). No obstante, está sujeta a una balanceada discreción del tribunal y debe realizarse "dentro de ciertas fronteras, contornos y postulados jurídicos". ***Charana v. Pueblo***, supra, pág. 653; ***Moscoso v. Rivera***, supra, pág. 493. Por lo tanto, antes de dictar una sentencia declaratoria, el foro primario debe sopesar los intereses públicos y privados de las partes, la necesidad de emitir el recurso y el impacto que tiene sobre lo reclamado, por lo que "debe demostrarse que los intereses de la justicia serían bien servidos y que la sentencia que se dicte sea efectiva y adecuada". ***Moscoso v. Rivera,*** supra, pág. 494.

**IV.**

Como cuestión de umbral, precisa atender primeramente el asunto jurisdiccional planteado por Remedy. Es decir, si procede la desestimación del recurso de apelación porque presuntamente hay falta de jurisdicción sobre la persona jurídica de Remedy. La parte apelada alegó que no ha sido debidamente emplazada.

En cambio, la parte apelante alegó que la *Sentencia Parcial* recurrida fue emitida a solo un (1) día de que se expidiera el emplazamiento, por lo que la falta de jurisdicción planteada no tiene que ver con la jurisdicción del foro apelativo para revisar la determinación apelada. Además, arguyó que Remedy ha evadido su emplazamiento, razón por la cual acudieron al emplazamiento por edicto.

Los tribunales debemos ser celosos guardianes de nuestra jurisdicción. **S.L.G. Szendrey-Ramos v. F. Castillo**, 169 DPR 873, 882 (2007). Por eso, las cuestiones relacionadas a la jurisdicción, al ser privilegiadas, deben resolverse con preferencia a cualquier otra. **Morán v. Martí,** 165 DPR 356, 364 (2005).

Asimismo, es preciso mencionar que, el emplazamiento es un mecanismo procesal por el cual se le notifica al demandado, a grandes rasgos, sobre la existencia de una reclamación presentada en su contra "para así garantizarle su derecho a ser oído y a defenderse si así lo desea". **Rivera v. Jaume**, 157 DPR 562, 575 (2002). Este mecanismo también se utiliza para que un tribunal pueda adquirir jurisdicción sobre el demandado de forma que este quede obligado por el dictamen que en su día recaiga. **Ross Valedón v. Hosp. Dr. Susoni et al.**, 213 DPR 481, 487-488 (2024); **Rivera Marrero v. Santiago Martínez**, 203 DPR 462, 480 (2019).

En el caso de marras, indiscutiblemente, Remedy se sometió a la jurisdicción de este Tribunal al momento en que entró a discutir en los méritos la moción de desestimación y en la que también expresó su oposición a la solicitud orden en auxilio de jurisdicción presentada por la parte apelante.

Por tanto, se declara No Ha Lugar a la solicitud de desestimación presentada por Remedy.

Atendido ese asunto, nos resta disponer sobre los planteamientos esbozados por la parte apelante en el recurso de *Apelación* de epígrafe.

En el caso de marras, la parte apelante nos solicitó que revoquemos la *Sentencia Parcial* emitida por TPI mediante la cual desestimó la solicitud de entredicho provisional e *injunction* preliminar, al concluir que la parte apelante contaba con remedios adecuados en ley que hacían improcedente la concesión del remedio extraordinario solicitado. Específicamente, por tener disponible el remedio que le puede proveer la sentencia declaratoria.

En síntesis, la parte apelante alegó que estos firmaron el Contrato en su capacidad representativa como miembros de TCG sin asumir en ningún momento obligaciones personales ni actuar como garantizadores individuales. Esta sostuvo que no suscribieron documento alguno que contuviera una obligación personal o cláusula arbitral en su carácter individual, ya que el propio Contrato establece que las garantías personales, si alguna, debían instrumentarse por separado mediante documentos definidos como "Loan Documents". Por lo cual, argumentó que no están obligados a participar de un proceso arbitral. Expresó además que la obligación de participar en un proceso arbitral cuya legitimidad se impugna de manera expresa representa un daño inmediato, concreto y no reparable.

También, la parte apelante alegó que erró el TPI al paralizar el caso y abstenerse de decidir sobre la cuestión de arbitrabilidad y que, en consecuencia, perpetuó un daño irreparable en su contra. Esta sostuvo que el TPI debió adjudicar la sentencia declaratoria, resolviendo si hubo consentimiento en carácter personal para arbitral para entonces decidir sobre la abstención a dirimir la controversia planteada.

Por su parte, Remedy arguyó que la parte apelante incumplió con los requisitos procesales que rigen la concesión de los remedios solicitados. Adujo que la parte apelante no presentó su solicitud como exige la Regla 57.1 de Procedimiento Civil, *supra*, para la expedición de una orden de entredicho provisional ex parte, ni observó los requisitos de notificación que impone la Regla 57.2 de Procedimiento Civil, *supra*. Asimismo, alegó que, como los señores Foster, Ortiz y Kwong firmaron en calidad de miembros, consintieron voluntariamente a someterse al proceso de arbitraje.

Tras un pormenorizado análisis objetivo, sereno y cuidadoso del expediente del caso y de los argumentos esbozados por las partes, en correcta práctica adjudicativa apelativa, resolvemos que el TPI no incidió en el error señalado. El TPI actuó correctamente al desestimar la solicitud de *injunction* preliminar y permanente solicitado, toda vez que estos tienen a su haber un remedio adecuado en ley para que se dirima el asunto con relación a la responsabilidad de las partes en virtud de las cláusulas del Contrato. También, resolvemos que el TPI no erró al ordenar la paralización del caso mientras el procedimiento de arbitraje se encuentre pendiente de adjudicación.

La apelante pretende detener, mediante el recurso extraordinario de *injunction* y la sentencia declaratoria, el procedimiento de arbitraje contemplado en el Contrato, alegando que, como firmaron en capacidad de miembros de TCG y no personalmente, no corresponde que se les incluya en dicho proceso. En el caso de marras, TCG y las partes de epígrafe son parte de un Contrato con una cláusula de arbitraje. Según las definiciones del Contrato sobre quienes constituyen parte, se incluye, entre otros, a los miembros del prestatario, es decir a los señores Foster, Ortiz y Kwong como miembros de TCG. Asimismo, la sección 9.12 del Contrato, establece que cada parte, según define el Contrato,

acuerda a someter cualquier disputa o reclamo que puedan surgir al procedimiento de arbitraje. En consecuencia, resolvemos que la parte apelante no logró demostrar que el TPI hubiese abusado de su discreción al no expedir el *injunction* solicitado ni al paralizar la continuación del pleito.

Además, la concesión del interdicto es discrecional, por lo cual, la determinación del TPI no debe ser revocada, a menos que se demuestre abuso de discreción. ***Next Step Medical v. Bromedicon***, supra, pág. 487. De la misma manera, la determinación de paralización para atender la solicitud de sentencia declaratoria fue correcta en derecho en vista de la existencia de un procedimiento de arbitraje pendiente de adjudicación.

Por lo anterior, concluimos que el TPI no cometió los errores señalados, por lo que corresponde que confirmemos las sentencias apeladas. Además, por los fundamentos que anteceden, se declara No Ha Lugar a la solicitud de orden en auxilio de jurisdicción radicada por la parte apelante.

**V.**

Por los fundamentos expuestos, se declara No Ha Lugar a la *Moción de desestimación* radicada por Remedy. Asimismo, se declara No Ha Lugar a la solicitud de orden en auxilio de jurisdicción radicada por la parte apelante y se confirman las sentencias apeladas.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones